UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA

                                                                24-cv-4116 (PKC)
                                                                22-cr-15 (PKC)

        -against-

                                                                   ORDER

NELSON SILVERIO

                                     Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Nelson Silverio, proceeding pro se, moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  Silverio pleaded guilty, pursuant to a plea agreement, to one count of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2).  Following his guilty plea, the Court sentenced Silverio principally to 108 months' imprisonment.  (ECF 56.)  The government has filed a response in opposition, addressing Silverio's arguments.  (ECF 66.)

        For the reasons that will be explained, Silverio's motion will be denied.

BACKGROUND

        Silverio's offense conduct is described in his Final Presentence Report (the "PSR"), whose facts were adopted at sentencing as the Court's findings of fact without objection from Silverio or the government.  (ECF 58 at Tr. 3.)

        At 8:00 in the morning on April 29, 2021, a verbal altercation began among Silverio, his co-defendant Carlos Valverde, and a victim.  This altercation began inside a bar and continued out into the street.  (PSR ¶¶ 10-12.)  Silverio attempted to punch the victim, and the

1

victim ran away from Silverio and Valverde down 157th Street.  (Id. ¶ 12.)  Silverio and Valverde followed the victim.  Both Silverio and Valverde then produced firearms and fired multiple shots at close range at the victim, who had fallen on the ground as he attempted to flee.  (Id.)  The victim was able to stand up and continue to run away as Valverde and Silverio continued to fire their weapons at him; they fired at least five rounds at the victim, and the victim was struck in the leg.  (Id.)  Silverio then passed his gun to his sister, who was also present, and Silverio and Valverde fled the scene.  (Id.)

Silverio was not arrested for this incident until January 2022.  (Id. ¶ 15.)  In the course of his arrest, the NYPD recovered a .9 millimeter Smith & Wesson handgun from Silverio's apartment, which was loaded with seven rounds of ammunition.  (Id.)  Testing revealed that this handgun was not the same gun that was used in the shooting of the victim described above and was, in fact, a different gun.  (Id.)  Law enforcement also recovered between 30 and 50 empty, unlabeled prescription pill bottles from the apartment, as well as a digital scale.  (Id.)

Silverio had a previous conviction in a Florida state court for "Aggravated Battery Deadly Weapon Bodily Harm," to which he pleaded guilty and was sentenced to one month and 25 days of imprisonment.  (Id. ¶ 32.)  At sentencing before this Court, Silverio's counsel represented that this conviction arose from an incident in which Silverio hit a victim with a rock.  (ECF 58 at Tr. 5, 8-10.)  Silverio asserted that he was acting in self-defense against a group of people and that the rock he threw hit the victim in the arm.  (Id. at Tr. 11.)

On March 3, 2023, Silverio executed a waiver of indictment and pleaded guilty to Count 1 of the Superseding Information: possession of ammunition while knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding

one year.  (ECF 46 at Tr. 5-6, 17.)  At the change of plea proceeding, the Court explained that, pursuant to Silverio's plea agreement, Silverio had agreed that if the Court sentenced him to 120 months' imprisonment or any term of imprisonment below 120 months, he would not appeal or collaterally attack the sentence.  Silverio stated that he understood this provision of the plea agreement.  (Id. at Tr. 12-13.)

When asked by the Court what he had done that led him to believe he was guilty of the crime charged in Count 1, Silverio stated: "I was convicted in Florida for a felony.  I admit the ammunition.  I admit the victim was chased and was shot. . . . And I was with the codefendant."  (Id. at Tr. 14-15.)  The Court observed: "Okay.  That doesn't sound like a crime."  Silverio then added: "I illegally possessed the ammunition and the gun."  He agreed that his prior conviction in Florida was a crime that was punishable by a term exceeding one year of imprisonment and stated that he knew he had been convicted of that crime at the time he possessed the ammunition and the firearm.  (Id.)  The Court found that this was a sufficient factual predicate to support a guilty plea.  (Id. at Tr. 16-18.)

On June 27, 2023, the Court sentenced Silverio to 108 months' imprisonment.  (ECF 56; ECF 58 at Tr. 20-21.)  The Court also ordered that Silverio forfeit any right, title, and interest in any gun seized in connection with the crime; the government represented that the firearm had already been forfeited.  (Id. at Tr. 23-24; see also ECF 57.)

On May 21, 2024, Silverio filed a motion pursuant to 28 U.S.C. § 2255(a).  (ECF 61; see also 24-cv-4116 at ECF 1.)  He asserts that his Second, Fifth, and Fourteenth Amendment rights were violated by his conviction.

Silverio does not argue that 18 U.S.C. § 922(g) is unconstitutional.  Instead, he argues that "[b]ased on the Second Amendment's text, as informed by Founding-Era history and

3

tradition, the Second Amendment protects Petitioner against the government's summarily [sic] abrogation, for life, Petitioner's secured right to possess a legal firearm, and his protected right to self-defense." (ECF 62 at 9.) He characterizes the government as claiming that he is no longer "one of 'the people'" to whom the Constitution applies since his felony (which he also characterizes as "reduced to misdemeanor only one criminal point under the Chapter Four[]"), and that his "Constitutional secured right to self-defense, and his right to possess a firearm, both immediately evaporated" upon his conviction. (Id. at 10.)

   Silverio asserts that he is a United States citizen and "one of 'the People,'" as that term is used in the Constitution, that he is entitled to keep and bear arms and to the right of self-defense, and that the United States "has no historical tradition of disarming people like him." (Id. at 10, 23.) Silverio traces the history of caselaw interpreting the term "People" to mean the national community. (Id. at 11-12.) He asserts that the government's conduct in "arbitrarily abrogating" his right to self-defense and "capriciously abrogating" his right to possess a firearm impermissibly burdens his Second Amendment rights. (Id. at 12-13.)

   Silverio extensively cites District of Columbia v. Heller, in which the Supreme Court held that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 635 (2008). Silverio dismisses the use of the term "law-abiding" in Heller as "the Judge's unsupported personal opinion of felons" and argues that it constitutes dictum. (ECF 62 at 17.) He also claims the term is "void for vagueness." (Id. at 17-18.)

   In response, the government first asserts that Silverio's motion is procedurally deficient because Silverio is attempting to use his section 2255 motion as a substitute for a direct appeal, which he did not pursue. (ECF 66 at 2-3.) The government notes that Silverio waived

4

his right to appeal or collaterally attack his conviction in his plea agreement. The government also asserts that Silverio has not shown cause and actual prejudice or actual innocence, as he needs to do in order to make these claims in a section 2255 motion. Finally, the government contends that even if Silverio's motion were not procedurally defaulted, it would still fail on the merits.

The Court agrees that Silverio's motion is both procedurally barred and also fails on the merits. The Court will therefore deny Silverio's section 2255 motion.

I. Silverio's Motion is Procedurally Barred.

A person in federal custody may collaterally attack a final judgment in a criminal case based on "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (citation omitted). Review of a section 2255 motion "is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018) (quoting Graziano, 83 F.3d at 590). An evidentiary hearing may be necessary if the motion "set[s] forth specific facts supported by competent evidence," but not if the factual assertions are "vague, conclusory, or palpably incredible." Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013) (citations omitted).

"Where, as here, a defendant did not raise an argument on direct appeal, he is procedurally barred from doing so on a collateral challenge under § 2255." Rajaratnam v. United States, 736 Fed.App'x 279, 281 (2d Cir. 2018) (summary order) (citing Zhang v. United

States, 506 F.3d 162, 166 (2d Cir. 2007)). "This rule recognizes the 'tension' between collateral challenges and 'society's strong interest in the finality of criminal convictions' and, thus, 'make[s] it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" Id. (quoting Yick Man Mui v. United States, 614 F.3d 50, 53-54 (2d Cir. 2010)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). In order to demonstrate cause, a defendant must show "some objective factor external to the defense" prevented him from raising the issue earlier. Gupta v. United States, 913 F.3d 81, 84 (2d Cir. 2019) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

"Cause" may be shown by, for example, a legal or factual basis that was not available during the time the defendant could have made a direct appeal. Id. But Silverio has not established such a basis. Silverio cites extensively to the Supreme Court's decision in Bruen to argue that the Second Amendment protects his right to carry a handgun for self-defense outside the home. (See, e.g., ECF 62 at 7.) New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1, 10 (2022) (citations omitted) ("We . . . now hold . . . that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.").

But the government notes that Bruen was issued by the Supreme Court in June 2022, approximately eight months before Silverio pleaded guilty, and approximately a year before judgment was entered, triggering his time to file a direct appeal. (ECF 66 at 3.) But Silverio made no argument about Bruen at his plea hearing or sentencing, and he did not file a

6

direct appeal based on Bruen.  Silverio also does not make a claim that his counsel was ineffective in not raising an argument based on Bruen.  (Id. at 4.)

Silverio also makes no claim that he is "actually innocent" of the crime for which he was convicted.  See Bousley, 523 U.S. at 622.  In fact, while Silverio stated at his plea hearing that he "illegally possessed the ammunition and the gun" (ECF 46 at Tr. 15), in his motion, Silverio states that his "possession of a legal firearm to defend himself at home" was permissible under the Constitution and Heller.  (ECF 62 at 21; see also id. at 23.)  There is no showing in the record, other than his conclusory statements, that Silverio came into possession of the gun in question legally, and in any event, Silverio pleaded guilty to only a count of illegally possessing ammunition, not the gun found in his apartment.

Because Silverio did not raise his claims on direct appeal and because he has not made a showing of cause or prejudice, these claims are procedurally barred as a basis for relief under section 2255.

Also, Silverio validly waived his right to collaterally attack or appeal his sentence in his plea agreement.  "'Waivers of the right to appeal a sentence are presumptively enforceable,' and the exceptions to this rule 'occupy a very circumscribed area of our jurisprudence.'"  United States v. Borden, 16 F.4th 351, 354–55 (2d Cir. 2021) (citations omitted).  "In some cases, a defendant may have a valid claim that the waiver of appellate rights is unenforceable, such as when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus 'amount[ing] to an abdication of judicial responsibility subject to mandamus.'

7

These exceptions to the presumption of the enforceability of a waiver, however, occupy a very circumscribed area of our jurisprudence. Accordingly, we have upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement." United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000) (citations omitted).

Here, the record shows that Silverio's waiver of his appellate rights was knowing, voluntary, and competent. (ECF 46 at Tr. 10-18; id. at Tr. 18.) At the plea proceeding, the Court asked Silverio to identify the copy of his plea agreement and his signature on the last page, and asked Silverio whether he signed it, whether he read and understood it before he signed it, whether he discussed it with his attorney before he signed it, and whether it contained all his understandings with the government; Silverio answered yes to each of these questions. (Id. at Tr. 10-11.) Silverio also denied that anyone had threatened or forced him in any way to enter into the plea agreement or to plead guilty, nor had they promised him anything or given him anything of value to do so. (Id. at Tr. 11.)

The Court then explained to Silverio: "One of the features of your plea agreement is that if I should sentence you to 120 months' imprisonment, the government has agreed not to appeal. But you have agreed that if I sentence you to 120 months' imprisonment or any sentence of imprisonment below 120 months, that you will not appeal or collaterally attack the sentence. You have waived your right to appeal or collaterally attack the sentence unless the sentence is above the guideline range, and lawfully it cannot be. It's maxed out at 120 months. And if you were to appeal, your appeal would likely not be successful. If you were permitted to appeal and the appeal were not dismissed, the sentence would be reviewed for reasonableness and whether it

8

is in compliance with law. Do you understand all that?" Silverio responded, "Yes." (Id. at Tr. 12-13.)

After Silverio entered his plea of guilty, the Court stated: "Based on your responses to my questions, my observations of your demeanor, I find that you know your rights, you know the consequences of pleading guilty, and there's a factual basis for your plea of guilty. Your plea of guilty and your admission to the forfeiture allegations are accepted. Further, I find that the plea agreement, including its provisions waiving the right to appeal or collaterally attack a sentence under specified circumstances, was knowingly, voluntarily, and intelligently entered into." (Id. at Tr. 18.)

The Court ultimately sentenced Silverio to 108 months' imprisonment—a sentence below the stipulated Guidelines sentence of 120 months. Silverio therefore knowingly, voluntarily, and competently waived his right to collaterally attack or appeal his sentence if he received a sentence of 120 months or below, which he did in fact receive. Indeed, in his motion, Silverio makes no plausible claim that his appellate waiver was invalid.

Silverio's motion is also therefore procedurally barred by his waiver of appeal and his right to collaterally attack his sentence.

II.   Silverio's Motion Also Fails on the Merits.

Silverio's motion also fails on the merits. Silverio emphasizes at the beginning of his memorandum of law that he is not arguing that section 922(g)(1) is unconstitutional. (ECF 62 at 2 ("TAKE NOTICE[:] Petitioner does not allege that the government's law, 18 U.S.C. 922(g), is unconstitutional.").) He then explains that he is challenging his "exclu[sion]" from the "body of 'the People'" and the government's "summar[y] abrogation" of his Second Amendment

9

right to possesses a legal firearm for lawful purposes, and that the government's "[section] 922(g) prosecution against him" is unconstitutional as-applied to the facts of his case. (Id.) Silverio thus appears to be making an "as-applied" challenge to the constitutionality of section 922(g)(1) as opposed to a facial challenge to the statute. See Bucklew v. Precythe, 587 U.S. 119, 138 (2019) ("A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications.").

The Second Amendment protects the right to keep and bear arms, but this right is not absolute. See Heller, 554 U.S. at 626 ("Like most rights, the right secured by the Second Amendment is not unlimited."). Silverio primarily argues that his conviction under section 922(g) violates this right because it "abrogated" his right to possess a firearm for self-defense. The Supreme Court has recently explained, however, that its opinion in Heller "never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" United States v. Rahimi, 144 S. Ct. 1889, 1902 (2024) (quoting Heller, 554 U.S. at 626, 627 n.26).

In Rahimi, the Court held that "[w]hen a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect," and explained that, "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms," making such restrictions permissible under Bruen, which held that such regulations on the Second Amendment right must be "consistent with this Nation's historical tradition of firearm regulation." Id. at 1896–97; Bruen, 597 U.S. at 17. Rahimi thus refutes Silverio's

argument that "our Nation has no historical tradition of disarming people like him." (ECF 62 at 10.) While Silverio's prior felony conviction did not involve the use of a firearm, as Silverio and his counsel both explained at sentencing, it was still an act of physical harm to another person, and in any event, section 922(g)(1) does not inquire as to the subject matter or events underlying the felony conviction—only whether it was a conviction for a crime punishable by imprisonment for a term exceeding one year. 18 U.S.C. § 922(g)(1).

Silverio also asserts that he is one of "the people" to whom the Constitution applies—i.e., an American citizen—and that the government has thus impermissibly excluded him from enjoying this right. (ECF 62 at 10-11, 23.) As Silverio notes, the Supreme Court, in Heller, found "a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." Heller, 554 U.S. at 581. But the Court was also careful to caution: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626–27. Therefore, while the Second Amendment presumptively applies to all American citizens, the Supreme Court also upheld restrictions on those citizens who have felony convictions, such as Silverio.

The Third Circuit case that Silverio relies upon to support his argument that his conviction excluded him from "the People" has been vacated by the Supreme Court in light of Rahimi. See Range v. Attorney General of the United States of America, 69 F.4th 96, 100 (3d Cir. 2023), cert. granted, judgment vacated sub nom. Garland v. Range, 144 S. Ct. 2706 (2024). (See ECF 62 at 15-16.)

The Second Circuit has "join[ed] every other circuit to consider the issue in affirming that § 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." United States v. Bogle, 717 F.3d 281, 281-82 (2d Cir. 2013) (per curiam) (footnote omitted). The Second Circuit has not revisited the question of the constitutionality of section 922(g)(1) post-Bruen or Rahimi. In a summary order issued a few months before the Supreme Court's decision in Rahimi, however, the Second Circuit noted that, in Bogle, "[W]e upheld the constitutionality of Section 922(g)(1)" and that the movant "cites to no case authority in this Circuit since Bogle to support his argument that the constitutionality of Section 922(g)(1) is unclear." United States v. Brillon, 2024 WL 392949, at *1 (2d Cir. Feb. 2, 2024) (summary order), cert. denied sub nom. Brillon, Michael J. v. United States, 2024 WL 4427367 (U.S. Oct. 7, 2024). The Court also noted that Bruen "did not concern the constitutionality of Section 922(g)(1)." Id. The Court therefore concluded that, although "there are multiple pending cases before prior panels in this Circuit raising the constitutionality of Section 922(g)(1) following Bruen, we need not address the merits of that argument here because we conclude, at a minimum, that the constitutional infirmity alleged by Brillon as to his Section 922(g)(1) conviction is not clear under current law." Brillon, WL 392949 at *1 (citations omitted).[1] This Court concludes the same as to Silverio's motion.

CONCLUSION

Silverio's motion for relief under 28 U.S.C. § 2255 is DENIED. The Clerk is respectfully directed to terminate the motions (ECF 61 & ECF 64) and to close the civil case captioned Silverio v. United States, 24-cv-4116.

---

[1] At least one Circuit has found section 922(g)(1) constitutional post-Rahimi, both as-applied and facially. See United States v. Diaz, 116 F.4th 458, 472 (5th Cir. 2024).

12

Silverio has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011) (per curiam). This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

*P. Kevin Castel*
United States District Judge

Dated:   New York, New York
         October 18, 2024

COPY MAILED TO:
Nelson Silverio, Register No. 82199-509
FCI Ray Brook
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 900
RAY BROOK, NY 12977